ATTORNEY DISCIPLINARY PROCEEDINGS
liPER CURIAM.*
This attorney disciplinary proceeding arises from one count of formal charges filed against respondent, Gilmer P. Hingle of Monroe, Louisiana, by the Office of Disciplinary Counsel (“ODC”). The charges allege respondent violated Rules 1.2(c) (counseling a client to engage in conduct which the lawyer knows is criminal or fraudulent), 1.2(d) (fading to consult with client on relevant limitations on the lawyer’s conduct), 3.4(b) (falsification of evidence), 8.4(a) (violating Rules of Professional Conduct), 8.4(b) (committing a criminal act), 8.4(c) (engaging in conduct involving dishonesty, fraud deceit or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
UNDERLYING FACTS
In 1990, respondent represented Frank and Irma Feeback, owners of a used car dealership, in connection with criminal charges of filing false documents and theft by fraud. The charges against the Feebacks arose from a complaint filed by Linda Kay King, a former employee of the dealership. Ms. King alleged that the Feebacks submitted falsified title applications to the state in an attempt to defraud the state.
Prior to the filing of the criminal charges, the Feebacks received an anonymous letter. The writer of the letter claimed to have information that would incriminate the Fee-backs and its implied intent was to extort money from the Feebacks. After they were charged, the Feebacks gave the letter to respondent, and indicated that based on their own investigation, they believed the writer of the letter was Ms. King. Respondent discussed this letter with the district attorney; however, the district attorney did not take any action regarding the letter.
^Subsequently, Ms. King, who was experiencing financial difficulties, met with respondent. According to respondent, Ms. King implied at this meeting that if the Feebacks paid her debts, she would not testify against them.
Following this meeting, respondent prepared two affidavits. In the first, the Fee-backs agreed not to hold Ms. King liable for any harm she may have caused them, and not to seek criminal or other prosecution against Ms. King. The affidavit also stated that Ms. King would aid in the Feebacks’ defense and testify as to the truth in exchange for the Feebacks providing “financial aid” to her by assuming her debts at Nor-west Financial, Premier Bank, and Central Bank. This affidavit was signed by Frank and Irma Feeback on April 6, 1991. In the second affidavit, Ms. King declared that the Feebacks never requested or directed her or any other person to forge or falsify docu *637 ments. Ms. King signed this affidavit on April 7,1991.
Following the signing of these affidavits, respondent arranged for Ms. King’s debts to be assigned to Creative Mortgage Funding, Inc., a Louisiana corporation incorporated by respondent for the use of another client.[1] Brenda Hicks, respondent’s secretary and legal assistant at the time, testified that respondent instructed her to pick up money from the Feebacks, purchase cashier’s checks under the name of Creative Mortgage Funding, and issue the cheeks to Premier Bank, Norwest Financial, and Central Bank. Ms. Hicks then delivered the cashier’s checks to the financial institutions as payment of Ms. King’s debts.[2]
Respondent then filed a motion to quash the Feebacks’ indictments and attached a copy of Ms. King’s April 7,1991 affidavit. In response, the district attorney investigated the motive behind Ms. King’s affidavit, and discovered evidence linking respondent to the payment of Ms. King’s debts. When the district attorney confronted respondent with this evidence, he stated that a friend’s corporation had purchased the loans in a legitimate transaction. However, respondent admitted that Ms. King had not made any payments on the loan. Respondent also told the district attorney, “[i]f you as prosecutors can offer immunity to a witness to get him to cooperate, why can’t I offer him money?”
13As a result of this investigation, the Oua-chita Parish Grand Jury indicted respondent, charging him with the offense of public bribery, in violation of La. R.S. 14:118.[3] After a trial, respondent was convicted as charged. The trial court sentenced respondent to serve two years at hard labor, suspended the sentence and placed him on supervised probation for a period of three years. As a special condition of probation, the trial court ordered respondent to serve 180 days in the parish jail.[4] Respondent’s conviction and sentence were affirmed on appeal, and this court denied his request for review. State v. Hingle, 28,260 (La.App.2d Cir.6/26/96), 677 So.2d 603, unit denied, 96-1969 (La.1/10/97), 685 So.2d 141.
DISCIPLINARY PROCEEDINGS
After respondent was indicted in the criminal matter, the ODC filed a motion for interim suspension in this court. On May 5,1995, this court granted the motion and placed respondent on interim suspension pending further orders. In Re Hingle, 95-0803 (La.5/5/95), 654 So.2d 316.
On May 17, 1995, the ODC filed formal charges against respondent based on his conviction. Respondent filed a timely answer, and the matter was set for formal hearing before Rthe hearing committee. Respondent *638 was represented by counsel at the hearing, and he testified on his own behalf.
According to respondent, his conviction really arose from his attempt to represent his clients to the fullest. Respondent asserted that his clients were the victim of Ms. King’s extortion attempt. Although he showed the letter to the district attorney and sought assistance from him, the district attorney refused to act. Respondent contended his clients had no alternative but to pay the extortion in order to get Ms. King to tell the truth. While he accepted responsibility for his actions, he maintained his motive was not to help himself but rather to avoid harm to his client.
After the conclusion of the hearing, the hearing committee rendered its recommendation to the disciplinary board. Initially, the hearing committee found respondent’s conviction for public bribery clearly constituted a violation of the Rules of Professional Conduct. Regardless of respondent’s thought process during the events at issue, the hearing committee concluded that his conviction for public bribery “strikes at the very heart and most essential elements of our legal system....” The committee noted that this court imposed disbarment in similar cases where the respondent was convicted of bribery. In re Collins, 94-2251 (La.11/18/94), 645 So.2d 1131; Louisiana State Bar Ass’n v. Pitard, 462 So.2d 178 (La.1985). Therefore, the committee recommended respondent be disbarred.
The disciplinary board concurred in the factual findings of the hearing committee. The disciplinary board noted that it was particularly troubled by respondent’s total lack of remorse for his actions, pointing out that despite the fact he had been convicted of a felony, respondent maintained his actions were legal and akin to a prosecutor offering a witness immunity for testimony. After reviewing the aggravating and mitigating factors,[5] the board recommended respondent be disbarred.
Respondent filed a timely objection in this court to the disciplinary board’s recommendation, and the matter was set for oral argument pursuant to Supreme Court Rule XIX, § 11(G).
IsDISCUSSION
Respondent argues the motive for actions in this case was not for personal gain, but rather to avoid harm to his clients. However, in Pitará, we rejected a similar defense, concluding that the issue of specific intent was established in the underlying criminal proceeding. As in that case, even though respondent may not have viewed his conduct as criminal, he clearly intended to influence the conduct of a potential witness.
Respondent further argues that any viable alternatives to paying Ms. King were foreclosed by the district attorney’s failure to act in response to the evidence of extortion. While it may be true that the district attorney’s action placed respondent in a difficult position, the court of appeal, in affirming respondent’s criminal conviction, specifically rejected this argument and found respondent had other legal alternatives to bribery available to him, such as using the evidence of the extortion to impeach Ms. King at trial, or reporting her conduct to the state police.
Like the hearing committee, we find that respondent’s conviction for bribery of a witness strikes at the very heart of our legal system. Most disturbing is the fact that even in his brief to this court, respondent fails to recognize the serious ramifications of his conduct, and continues to compare his actions to those of a prosecutor offering immunity or a plea bargain.
Based on our review of the record, we conclude, as we did in Pitará, that the only appropriate sanction for respondent’s conduct is disbarment.
DECREE
Upon review of the findings and recommendation of the hearing committee and dis- *639 eiplinary board, the briefs and oral arguments of the parties and the record filed herein, it is the decision of the court that the recommendation of the disciplinary board be adopted. Accordingly, it is ordered that the name of Gilmer P. Hingle be stricken from the roll of attorneys and that his license to practice in the State of Louisiana be revoked. It is further ordered that the respondent make full restitution, plus legal interest, to his former clients. Costs of these proceedings, in the amount of $305.80, are assessed against respondent.

 Victory, J. not on panel. Rule IV, Part 2, § 3.

. The corporation had been originally created for respondent’s client, Dan Marshall. According to Marshall, the entity was merely a "paper corporation” that was never utilized due to a lack of funding. However, Marshall consented when respondent asked to use the corporation to execute a loan.

. Overall, Creative Mortgage Funding assumed $6,653 of Ms. King's debts. At the time of respondent’s criminal trial, Ms. King had not made any loan payments to Creative Mortgage Funding.

. La. R.S. 14:118 provides in pertinent part:
A. (1) Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
*:(****
(d) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
(2) The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
* * * * * *
C. Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.

.The trial court later granted respondent’s motion for reconsideration, suspended execution of the portion of respondent's sentence requiring him to serve 180 days in jail, and sentenced him to probation under La.Code Crim. P. art. 893.

. As aggravating factors, the board recognized:
(1) prior discipline (respondent was formally reprimanded on November 4, 1982 based on his conviction for three counts of possession of marijuana); (2) refusal to acknowledge wrongful nature of the conduct; (3) substantial experience in the practice of law; and (4) illegal conduct. As a mitigating factor, the board recognized respondent had a reputation of good character in the legal community.