hPER CURIAM.*
This disciplinary proceeding arises from one count of formal charges filed by the *589 Office of Disciplinary Counsel (“ODC”) against respondent, Robert W. Sharp, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
In early December of 1998, Jeffrey Glenn Freeman retained respondent to represent him in a criminal matter. Mr. Freeman had been charged with carnal knowledge of a juvenile in violation of La. R.S. 14:80 stemming from his sexual relationship with M.E., the fourteen-year-old daughter of S.H.[1] Several weeks prior to the scheduled criminal trial, Mr. Freeman’s nephew approached S.H. at the request of and on behalf of Mr. Freeman and offered her $10,000 in exchange for her efforts to have the Lincoln Parish District Attorney’s Office drop the criminal charges against Mr. Freeman. S.H. accepted the offer.
Subsequently, Mr. Freeman advised respondent about the deal made with S.H. Respondent advised his client that “it was a bad idea and that it could backfire on |?him.” Nonetheless, respondent agreed to draft a formal written agreement between his client and S.H.
As drafted by respondent, the agreement provided that in consideration of $10,000, S.H. and her daughter M.E. would cause the criminal charges against Mr. Freeman to be dropped and dismissed from further prosecution, and that they agreed to release and relinquish any rights or causes of action against Mr. Freeman for criminal as well as civil prosecution. The agreement stated S.H. was acting of her own free will and volition, and that she entered into the agreement with the intent of avoiding the necessity and embarrassment of requiring M.E. to testify at a protracted jury trial.
After drafting the agreement, respondent contacted S.H. and asked her to come to his office. At the time, respondent advised her that if she executed the document, he would retain the money until he received word the charges had been dropped against his client. Respondent gave S.H. the agreement and advised her to have other counsel review the document.[2]
Subsequently, S.H. sought the advice of another attorney, Charles Middleton. After evaluating the agreement, Mr. Middleton contacted respondent by telephone in S.H.’s presence and advised him that he believed the agreement was unenforceable and possibly illegal.
According to respondent, he then contacted his client and advised the deal would not work. Respondent and his client had no further contact with S.H., and the agreement was never signed.
S.H. retained another attorney, Scott Wolleson, for the exclusive purpose of assisting her in acquiring the $10,000 from Mr. Freeman. However, after Mr. Wolle-son spoke with respondent regarding the matter, Mr. Wolleson advised S.H. the case could not be pursued.
At some point after consulting with Mr. Middleton, but before seeing Mr. Wolle-son, S.H. contacted Shawn Alford, the assistant district attorney assigned Mr. Freeman’s criminal case, advised that neither she nor M.E. would offer any testimo *590 ny against Mr. Freeman at trial.[3] As a result, Ms. Alford contacted respondent to advise she would be willing to accept a plea agreement in Mr. Freeman’s case. Mr. Freeman apparently agreed to plead guilty to the reduced felony charge of contributing to the delinquency of a minor.
On the morning the trial court was scheduled to accept the plea, S.H. presented the written agreement to the district attorney’s office, apparently seeking advice as to whether she should sign the written agreement. Upon learning of the agreement, Ms. Alford refused to consent to the plea agreement, and advised Mr. Freeman the case would go to trial.
S.H. and M.E. ultimately testified at the trial. Mr. Freeman was convicted of carnal knowledge of a juvenile and sentenced to a prison term of eight years at hard labor. Thereafter, Ms. Alford filed a disciplinary complaint with the ODC against respondent.
DISCIPLINARY PROCEEDINGS
After investigation, the ODC concluded respondent’s actions amounted to public bribery or compounding a felony, even though respondent was never charged with any criminal violations. Accordingly, the ODC filed formal charges against | respondent alleging violations of the following provisions of the Rules of Professional Conduct: Rules 1.2(c) (counseling or assisting of a client to engage in conduct that the lawyer knows is criminal or fraudulent), 1.16(a) (failure to properly withdraw from legal representation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondent filed a lengthy answer. While he admitted he drafted the agreement, he denied any wrongful or criminal misconduct or intent on his part. Specifically, respondent conceded he “made a mistake of judgment” in drafting the contract, but that his intent was to resolve the matter in the absence of going to trial. Respondent alleged his error was rectified the day after he drafted the agreement when he spoke with Mr. Middleton, who had advised the agreement was possibly illegal.

Formal Hearing

At the formal hearing, the deposition testimony of several parties was admitted into evidence. In his deposition, Mr. Freeman testified it was his idea to send his nephew to offer the deal to S.H. However, he admitted that after respondent learned of the arrangement, respondent tried to talk him out of it because it could “backfire.” Mr. Freeman testified, after respondent spoke to Mr. Middleton, they thought the entire matter was over with. S.H. testified she wanted the $10,000 offered to her. She claimed respondent directed her to seek legal counsel on the matter and that she consulted with Mr. Middleton and Mr. Wolleson, both whom advised the contract was unenforceable.
| f;Mr. Middleton’s deposition testimony corroborated that of Mr. Freeman and S.H. Specifically, he testified he advised S.H. and respondent the deal would not work and that he strongly believed respondent agreed with him.
Respondent testified he has practiced law since 1973, specifically engaging in a general trial practice with 40% of his cases being criminal matters. Respondent stated he considered himself as “being a very *591 well known, well recognized criminal defense attorney in multiple parishes.” However, when asked whether the payment of money to a witness in a criminal proceeding could be viewed as compounding a felony, he responded he was unaware of the existence of such a crime.

Recommendation of the Hearing Committee

At the end of the hearing, the hearing committee concluded respondent’s actions violated Rule 1.2(c) (counseling or assisting of a client to engage in conduct that the lawyer knows is criminal or fraudulent), as well as a violation of Rule 1.16(a) (failure to properly withdraw from legal representation), based on his continued representation of Mr. Freeman after the illegal scheme was proposed.
However, the hearing committee determined the ODC failed to prove by clear and convincing evidence respondent violated Rules 8.4(b) (commission of a criminal adversely reflecting on the lawyer’s honesty, trustworthiness, or fitness) and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice). In support, it noted respondent encouraged S.H. to have her own attorney review the document. While it concluded respondent exercised “extremely poor judgment,” his actions did not rise to a violation of Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation). Finally, the hearing committee concluded Rule 8.4(a) (violating the Rules of Professional Conduct) had not been violated because to find so would be only a duplication of prior violations and not the finding [ sot an independent violation. The hearing committee concluded respondent’s conduct was negligent, and caused potential injury to the legal system, since he was aware the agreement was a bad idea and nonetheless continued to draft the agreement. Based on such, the hearing committee recommended a sixty day suspension.
The ODC filed an objection to the hearing committee’s findings and recommendation.

Recommendation of the Disciplinary Board

The disciplinary board adopted the hearing committee’s findings and recommendation in full. It concluded Rules 1.2(c) (counseling or assisting of a client to engage in conduct that the lawyer knows is criminal or fraudulent) and 1.16(a) (failure to properly withdraw from legal representation) were violated by respondent’s preparation of the receipt and release agreement which encouraged key witnesses to become noncompliant in Mr. Freeman’s criminal trial. It recognized that, although respondent was not instrumental in initiating the settlement, he continued the representation of his client and became involved in the offer and anticipated transfer of the funds to S.H. However, it agreed respondent did not violate Rules 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice), because the documents he drafted were never signed.
As an aggravating factor, the board recognized respondent’s substantial experience in the practice of law (admitted 27 years). In mitigation, it found respondent had no prior disciplinary record and demonstrated remorse.
| ./Considering these factors, the board adopted the hearing committee’s recommendation of a sixty day suspension.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board. Never *592 theless, the court docketed the matter for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G)(1)(a).
DISCUSSION
The record demonstrates that respondent assisted his client in a scheme to induce the victim in the underlying criminal proceeding to drop the criminal charges in exchange for payment of money. This conduct clearly amounts to a violation of Rule 1.2(c). Likewise, respondent’s failure to withdraw from the representation once it became clear his client intended to commit an illegal act violates Rule 1.16(a).
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent places much emphasis on the fact that the agreement he drafted was never executed, and that he believed S.H. decided not to pursue it after Mr. Middleton advised that it was probably illegal. However, S.H.’s actions indicated she believed the agreement was in force, as demonstrated by the fact that she informed the assistant district attorney that she and her daughter would not testify at trial. As a result, the assistant district attorney sought to enter into a plea bargain with respondent’s client, which almost came to fruition had the assistant district attorney not learned of the |sagreement. Seen in this light, respondent’s actions clearly had the potential to cause harm. Moreover, the notion that an attorney would assist a client in attempting to bribe a witness erodes public confidence in the criminal justice system and calls the entire legal profession into disrepute.
This court has looked harshly upon such conduct in the past. See Louisiana State Bar Ass’n v. Pitard, 462 So.2d 178 (La.1985) (attorney disbarred based on conviction of public bribery and conspiracy to commit public bribery, in violation of La. R.S. 14:118 and 14:26, respectively). However, we recognize mitigating factors are present, including respondent’s lack of a prior disciplinary record and his expression of remorse. Additionally, we are convinced from the record that respondent sincerely believed he was not engaging in an illegal action by drafting the agreement. Once respondent learned from other counsel that the agreement was improper, he believed that the agreement was abandoned by the parties. The objective facts indicate this conclusion may not have been correct; however, we find respondent felt no harm would come from his actions in light of his belief that the agreement would never be executed. While respondent’s state of mind does not excuse his actions, it serves to mitigate the sanction.
Accordingly, we find the appropriate sanction for respondent is a suspension from the practice of law for a period of one year and one day, which will necessitate that respondent file an application for reinstatement.
DECREE
Upon consideration of the record, briefs and oral argument, it is ordered that Robert W. Sharp be suspended from the practice of law in the State of Louisiana for a period of one year and one day. All costs and expenses in the matter are assessed | flagainst respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days *593 from the date of finality of this court’s judgment until paid.
KNOLL, J., concurs in part and dissents in part, and assigns reasons.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. Because of the sensitive nature of the underlying criminal case, we will use initials to protect the identity of the victim.

. One of the few facts in dispute is regarding an alleged statement respondent made to S.H. at their meeting. At the hearing on the disciplinary charges, S.H. testified respondent advised her not to show the document to the district attorney. However, respondent disputes he made the statement.

. The assistant district attorney was still not aware of the agreement at this time.