# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #043

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **1st day of September, 2015**, are as follows:

**PER CURIAM**:

2015-B -0243      IN RE: DONALD R. PRYOR

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Donald R. Pryor, Louisiana Bar Roll number 18389, be and he hereby is suspended from the practice of law for one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

KNOLL, J., dissents on the sanctions and would impose disbarment.
GUIDRY, J., dissents with reasons.
CRICHTON, J., concurs in part, dissents in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-B-0243

IN RE: DONALD R. PRYOR

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Donald R. Pryor, an attorney licensed to practice law in Louisiana.

**ALLEGATIONS OF THE FORMAL CHARGES**

Respondent represented Emily Winborn in criminal proceedings captioned *State of Louisiana v. Emily Winborn*, case number 498-791 on the docket of the Criminal District Court for the Parish of Orleans. Ms. Winborn was charged with simple burglary of an inhabited dwelling based on allegations that she broke into Brian Bode's raised double-shotgun house and stole a gun.

Mr. Bode testified as a witness for the prosecution at Ms. Winborn's trial. At that time, Mr. Bode testified that respondent came to a restaurant he owns with his daughter and offered him $300 to drop the charges against Ms. Winborn. Mr. Bode also testified that when he refused to drop the charges, respondent confronted him again and offered him $500 not to show up in court for Ms. Winborn's trial.

Although the ODC acknowledged respondent denies these allegations, the ODC concluded, based on its investigation, that Mr. Bode's version of events was credible. Accordingly, the ODC charged respondent with violations of Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a

criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

## DISCIPLINARY PROCEEDINGS

Respondent filed an answer to the formal charges, essentially denying any misconduct. The matter then proceeded to a formal hearing on the merits. The hearing committee heard several witnesses testify, including both respondent and Mr. Bode.

### *Summary of the Hearing Testimony*

During his testimony at the hearing, respondent admitted that he went to Mr. Bode's restaurant on August 20, 2010 to ask Mr. Bode to drop the charges against Ms. Winborn and asked him to execute an affidavit to that effect. He also admitted that he offered Mr. Bode $300. However, he claimed this payment represented "restitution" for Mr. Bode's lost gun and denied that the $300 was payment to drop the charges. Nonetheless, respondent conceded the purported "restitution" was incidental to his main purpose of having Mr. Bode execute an affidavit dropping the charges against Ms. Winborn:

> Q: [You weren't] going to give the three hundred dollars to Mr. Bode unless he signed the affidavit?
>
> A: No. The affidavit was basically - and I think this affidavit is the most important part, and I don't want to get it confused or mixed up at all. Because I do understand that if it is the original intent of Mr. Bode, if it is the original intent of Emily that he told her that he did not want to pursue any charges, that is the whole purpose of getting the affidavit. Restitution for the three hundred dollars for the gun is just, you know, incidental to make him whole.

2

Q: Okay. Did he get the three hundred dollars ... ?

A: No.

Q: Why not?

A: Because he said he didn't want to do an affidavit.

Mr. Bode testified that, during respondent's first visit to the restaurant, respondent told him the $300 was for him to drop the charges and payment for the gun. Mr. Bode then told respondent that he had already found the gun:

> I don't know what period of time it was, but [respondent] came to [the restaurant] and asked to speak, asked my daughter if I were there, and my daughter called me over and I spoke to [respondent]. And he told me that - he tapped his suit coat with his hand and said, I have three hundred dollars here if you drop the charges and that'll take care of the gun. I told him I found the gun in the yard within, I think I said, three weeks. He asked if I reported it to the DA. I said: No. Should I have? And I don't recall him answering the question.

Mr. Bode also told respondent that he was not going to drop the charges because the stolen item had been a dangerous weapon. The next day, Mr. Bode called the district attorney's office to report respondent's visit and the $300 offer. Soon thereafter, two detectives came to talk to Mr. Bode about the incident. Mr. Bode further testified that, when respondent visited him the second time, respondent said he had $500 if Mr. Bode did not show up for court the next day. When respondent saw Mr. Bode in the courtroom the next day, respondent said, "I thought we had a deal, you weren't going to show up." Mr. Bode then called the assistant district attorney over, and respondent and the assistant district attorney "had a few words" before walking off. Mr. Bode indicated that he did not know respondent prior to Ms. Winborn's criminal matter and had no reason to fabricate his testimony. Mr. Bode indicated that he did not have any grudges against respondent but "just had a funny feeling that he couldn't be trusted."

3

Graymond Martin, the first assistant district attorney for Orleans Parish, testified that, well before Ms. Winborn's trial, he sent an investigator to talk to Mr. Bode about respondent's $300 offer to drop the charges. According to Mr. Martin, the investigator asked Mr. Bode to wear a wire to gather more concrete evidence against respondent, but Mr. Bode elected not to participate at that level.

Respondent presented Calvin Johnson, a former criminal court judge, as a character witness. Judge Johnson testified that he has known respondent since respondent became an attorney and that respondent is a good, prepared, and diligent attorney. He indicated that he has never known respondent to be dishonest and has never heard of respondent trying to bribe anyone, but he was not involved in Ms. Winborn's case. Judge Johnson further testified that he is familiar with affidavits of non-prosecution like the one respondent wanted Mr. Bode to sign but has not seen such an affidavit in use since the 1980's. He stated that he used them when a victim expressed an unwillingness to go forward, but money "never, ever" changed hands. He also indicated that restitution might be paid in connection with the affidavit but implied that restitution would be paid even if the victim would not drop the charges. The evidence of restitution would be used to mitigate the sentence.

Robert Jenkins, an attorney who was accepted as an expert in criminal defense practice and trial preparation, testified that his usual practice is to notify the district attorney's office and have an independent attorney go with him if he wants to interview a witness. He also stated that affidavits of non-prosecution rarely work and that, when restitution is offered, the attorney must take an unbiased witness to confirm the offer is really restitution and not a bribe. He never signs the affidavit himself, as it would be a conflict of interest, but enlists the help of the independent attorney who accompanied him. He further stated that it would

4

be unethical to offer money to a victim to drop the charges. Finally, he was not involved in Ms. Winborn's case and knew nothing about it.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee determined that resolution of this matter required a credibility determination. The committee found that Mr. Bode was a credible witness with no apparent motive to lie about his interactions with respondent. Furthermore, although respondent attempted to show that Mr. Bode's memory was failing, the details he did remember led the committee to believe his version of events.

The committee further found respondent's testimony, in which he asserted he offered Mr. Bode the $300 as restitution rather than for the purpose of dropping the criminal charges against Ms. Winborn, was not credible. The committee pointed out that when asked why he ultimately did not pay Mr. Bode $300, respondent admitted that he did not do so "because he said he didn't want to do an affidavit." Thus, the committee determined respondent's own testimony contradicted his assertion that the $300 was not intended as payment for dropping the charges.

After hearing the testimony, observing the witnesses' demeanors, and considering the logical interpretation of the interactions, the committee believed that (1) the $300 was a bribe for Mr. Bode to drop the charges against Ms. Winborn, and (2) the $500 was offered as a "last resort" attempt to keep Mr. Bode from appearing at the trial, which would make it more likely that the charges would be dropped. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.

In aggravation, the committee found respondent had a prior disciplinary record, refused to acknowledge the wrongful nature of the conduct, and had substantial experience in the practice of law (admitted 1987). The committee could find no mitigating factors present in this matter.

After considering this court's prior jurisprudence addressing similar misconduct, the committee recommended that respondent be disbarred.

*Disciplinary Board Recommendation*

After review, the disciplinary board adopted the hearing committee's credibility assessments of respondent and the other witnesses and determined that the committee's factual findings are supported by the record and are not manifestly erroneous. The board further determined that the committee correctly applied the Rules of Professional Conduct to the facts when it concluded respondent violated the rules as alleged in the formal charges. In agreeing with the committee that respondent's actions constituted attempted bribery in violation of the Rules of Professional Conduct, the board noted

> it is curious that [respondent,] a lawyer with honest intentions, who has been practicing since 1987, and whose practice is "eighty to ninety percent criminal law" failed to take a third party lawyer/witness with him to the meetings with Mr. Bode where he was offering "restitution." His own expert witness, Robert Jenkins, testified that he made it his standard practice in such circumstances to approach victims only if he is accompanied by a third party unassociated lawyer who, by his presence, legitimizes any offers of restitution and also hinders potential accusations of intimidation or bribery.

The board then determined that respondent knowingly, if not intentionally, violated duties owed to the public and the legal system. Although no harm actually occurred, the board determined that potential harm to the outcome of Ms. Winborn's case clearly existed. Furthermore, real harm to the legal profession's

reputation occurs whenever the public learns of, or is subject to, an attorney's unethical conduct. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board appeared to suggest that the baseline sanction is in the range of a suspension to disbarment.

In aggravation, the board found a prior disciplinary record, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. In mitigation, the board found good character or reputation as evidenced by the testimony of Judge Johnson and Mr. Jenkins. Under these circumstances, the board recommended that respondent be suspended from the practice of law for one year and one day.

Respondent and the ODC both filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). It is well settled that in such cases, we function as the trier of fact and conduct an independent review to determine if the charged misconduct is proven by clear and convincing evidence. *Louisiana State Bar Ass'n v. Boutall*, 597 So. 2d 444 (La. 1992).

Nonetheless, we have recognized that the hearing committees appointed by this court have a unique and critical role in the process, as the members of these committees actually hear and see the witnesses who testify at the formal hearing. In *In re: Bolton*, 02-0257, p. 7 (La. 6/21/02), 820 So. 2d 548, 553, we discussed the committee's role:

> Because much of this case turns on respondent's subjective intent, we place great emphasis on the findings of the members of the hearing committee on this issue.

7

The three members of the hearing committee, two of whom were attorneys and one of whom was a lay person drawn from the community, had the opportunity to see and hear the witnesses, including respondent, who testified in this matter. Unlike the disciplinary board and this court, the hearing committee was not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. *See, e.g., In re A.J.F.,* 00-0948 (La. 6/30/00), 764 So.2d 47; *Adkins v. Huckabay,* 99-3605 (La. 2/25/00), 755 So.2d 206.

\* \* \*

While the evidence could support a contrary conclusion, we have observed in a civil context that where the fact finder is presented with two permissible views of the evidence, the fact finder's choice between them is not clearly wrong. *Rosell v. Esco,* 549 So.2d at 840, 844 (La. 1989). **Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during respondent's testimony and who act as the eyes and ears of this court.** [emphasis added].

Similarly, in the instant case, we place great emphasis on the hearing committee's findings concerning the credibility of respondent and Mr. Bode. The committee concluded that Mr. Bode – a witness with no apparent motive to lie about his interactions with respondent – was credible when he testified that respondent offered him $300 to drop the charges against Ms. Winborn and then, the day before trial, offered him $500 not to show up in court for the trial. Likewise, the committee concluded that respondent's version of these events was not credible.

Based on our independent review of the record, we see no basis to disregard the hearing committee's factual findings. While we acknowledge Mr. Bode testified he could not recall the exact words of his conversation with respondent, he remembered sufficient details to cause the committee to believe his version of events. Most significantly, respondent's own testimony was internally inconsistent

8

with regard to his intent in offering the $300 payment to Mr. Bode. Although respondent sought to characterize the payment as restitution for Mr. Bode's stolen gun, respondent admitted he would not give Mr. Bode the money until Mr. Bode executed the affidavit dismissing the charges against Ms. Winborn. This testimony clearly supports the conclusion that any intent to provide restitution was incidental, as respondent's overarching purpose in offering the money was to have Mr. Bode execute an affidavit dropping the charges. Therefore, we cannot say the hearing committee was clearly wrong when it determined, based on its credibility findings, that respondent violated the Rules of Professional Conduct as charged.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent knowingly, if not intentionally, violated duties owed to the public and the legal system. Although no harm actually occurred, a significant potential for harm existed.

We have traditionally dealt harshly with lawyers who give or offer to give anything of value to a witness with the intent to influence their conduct as witnesses in criminal proceedings. In *In re: Hingle*, 98-0774 (La. 9/18/98), 717 So. 2d 636, we disbarred an attorney who was convicted of public bribery stemming from his payment of a witness's debts in exchange for the witness's agreement not to testify against his clients. The lawyer in *Louisiana State Bar*

9

*Ass'n v. Pitard*, 462 So. 2d 178 (La. 1985), was likewise convicted of public bribery after he offered financial "settlements" to the families of three victims in exchange for affidavits exonerating his client of wrongdoing. However, in both *Hingle* and *Pitard*, the evidence established not only that the lawyer had knowingly pursued an inappropriate course of action but also that he had been convicted of a serious felony.

A case more analogous to the instant facts is *In re: Sharp*, 01-1117 (La. 12/7/01), 802 So. 2d 588, in which the lawyer, at the request of his client, met with the mother of the fourteen-year old victim in the case and drafted an agreement which offered her $10,000 in exchange for requesting that the criminal charges be dropped. Ultimately, the agreement was never signed, and no payment was made. In suspending the lawyer for one year and one day, we concluded the lawyer was sincere (although in error) in believing he was not engaging in an illegal act by drafting the agreement.

While the facts of *Sharp* are not directly on point with the instant case, *Sharp* suggests the intent of the lawyer is critical in determining the severity of the sanction to be imposed. Unlike cases such as *Hingle* and *Pitard*, where the improper intent of the lawyer was established through criminal proceedings, intent is more difficult to determine in cases such as *Sharp* and the instant one, where the improper act never comes to fruition and is never prosecuted.

Respondent relies on Mr. Jenkins' expert testimony for the proposition that it is not unethical for a lawyer for a defendant to offer a victim restitution or obtain an affidavit from the victim dismissing the charges, as long as no money is offered in exchange for the affidavit. However, Mr. Jenkins acknowledged there is a danger that any such attempt could be construed as bribery or intimidation, and he emphasized the need to ensure an unbiased witness is present during any discussions between the lawyer and victim.

The dangers alluded to by Mr. Jenkins are well illustrated by the instant case. Even assuming *arguendo* that respondent did not have a sinister motive in mind, Mr. Bode clearly perceived respondent's communications as improper. As an experienced criminal lawyer, respondent should have been aware that his actions could be interpreted as bribery or intimidation and taken sufficient safeguards to avoid such an impression. Thus, at the very least, respondent's conduct in this case "erodes public confidence in the criminal justice system and calls the entire legal profession into disrepute." *Sharp*, 01-1117 at p. 8, 802 So. 2d at 592.

Considering the totality of the circumstances in this case, we find the appropriate sanction is a suspension for one year and one day, which will require respondent to submit a formal application for reinstatement.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Donald R. Pryor, Louisiana Bar Roll number 18389, be and he hereby is suspended from the practice of law for one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

09/01/15

SUPREME COURT OF LOUISIANA

NO. 2015-B-0243

IN RE: DONALD R. PRYOR

ATTORNEY DISCIPLINARY PROCEEDING


GUIDRY, J., dissents with reasons.

I would impose greater discipline.

09/01/15

SUPREME COURT OF LOUISIANA

NO. 2015-B-0243

IN RE: DONALD R. PRYOR

ATTORNEY DISCIPLINARY PROCEEDING

CRICHTON, J., concurs in part and dissents in part and assigns reasons:

I agree with the majority's finding that the hearing committee correctly determined, based on its credibility findings and clear and convincing evidence, that respondent violated the Rules of Professional Conduct as charged. However, I find that the seriousness of respondent's conduct, when coupled with his previous disciplinary record, warrants disbarment.