WEIMER, J.,
dissenting.
LI respectfully dissent. In this matter, we' are called, on to evaluate the rights guaranteed to this attorney pursuant to the First Amendment to the United States Constitution[1] and Article 1, § 7 of the Louisiana Constitution entitled “Freedom of Expression”[2] to engage in speech re *670 garding public officials who serve as judges. In evaluating the rights afforded this attorney to freely engage in speech, we are not required to believe the allegations lodged about the judges or question the integrity of these judges. In dissenting, I do not question the integrity of these judges. However, we are required to evaluate the totality of the facts in this record to determine if there is an objective factual basis for the attorney to have made the allegations. In performing this evaluation, we must not create an environment in which an attorney, who is duty-bound to report concern about our judicial system, will become too timid in lodging a concern due to fear of being disciplined.
In the family law matter, the respondent is charged with breaching the Rules of Professional Conduct for filing a writ application in this court that allegedly contained “offensive and inaccurate criticism of four members of the Louisiana Judiciary,” i.e., a district court judge and three members of an appellate court panel. | ^Although respondent is charged with misconduct in connection with a bankruptcy matter for which the majority devotes a paragraph of discussion,[3] it is apparent from the majority’s opinion that the respondent’s efforts to recuse Judge Keaty from handling Mr. Hunter’s case, as well as respondent’s criticisms in the writ application filed in this court on behalf of another client, Mr. McNabb, are the majority’s greatest concern. The majority refers to the recusal efforts and the writ application criticisms as “the Keaty matter,” based on the name of the district court judge, though appellate court judges were also criticized in the writ application. For simplicity, I will also refer to these aspects of this disciplinary case as “the Keaty matter.”
In this fact-intensive case, the majority has failed to account for some key evidence in the Keaty matter. Part of respondent’s defense against the charge that she filed an unfounded motion to recuse Judge Keaty from Mr. Hunter’s case included pointing out that Keaty Real Estate had contracted to sell separate property of Mrs. Hunter that was the subject of a pending community property reimbursement claim. Judge Keaty’s Personal Financial Disclosure Form revealed that the Judge has an interest in Keaty Real Estate of Colorado, which has the same address as Keaty Real Estate.. Ultimately, another judge ordered Judge Keaty recused from the Hunter matter “due to a “community interest.” ” This evidence regarding a potential connection between Keaty Real Estate business interests and Mrs. Hunter was unrefuted. Evidence did indicate Judge Keaty amended her financial disclosure form.
The majority also turns to “[ojrdinary experience” to explain that the respondent should not have suspected anything nefarious regarding the audio recording of Judge Keaty’s explanatory statement of her relationship with Mrs. | ¡¡Hunter’s family. In re: Mire, 15-1453, slip op’n at 668 (La.2/19/16). However, in resorting to “[ojrdinary experience,” the majority again overlooks unrefuted evidence specific to this case. The recording was not simply spliced, as the majority suggests, but material was added in a recording format that was not available with the court’s recording software.
The majority holds that respondent’s statements regarding the judiciary must *671 be justified by “any objective supporting evidence,” else those statements are sanc-tionable under Rule 8.2(a) of the Louisiana Rules of Professional Conduct. See In re: Mire, slip op’n at 668. Assuming- for the sake of argument that such is the correct standard,[4] respondent provided unrefuted evidence that satisfies the standard. By applying a standard that essentially examines whether there was objective support for respondent to criticize the district court, I believe that a reasonable person could justifiably disbelieve that the court’s recording equipment went haywire at the exact moment of Judge Keaty’s purported disclosure. The attorney’s expressed doubt in the veracity of Judge Keaty’s claim of having made an explicit disclosure of a connection with the opposing litigant emerges not merely from the low odds of such a coincidence, but from the fact that the respondent had proof that the ultimate sources of the district court’s transcript were spliced together from source material that was inconsistent with the court’s digital recording equipment.
|4The respondent is also charged with misconduct in connection with this language from the writ application: ■ “Although the [appellate] court which affirmed the egregious actions of the trial court [ie., Judge Keaty’s Division] is the same court Judge Keaty is actively campaigning to sit upon, Stan [McNabb, respondent’s client] did not presume wrongdoing.” The majority overlooks that the quoted statement is actually truthful, in that Judge Keaty was campaigning for a seat on the appellate court at the time.
The charges against the respondent also called the respondent to account for this statement in the writ application: “The corruption and/or incompetence of attorneys and judges in this case is not only a systemic problem; it is an opportunity for reparation for Stanford McNabb and everyone who was victimized by a system designed to protect their rights.” While inflammatory and unprofessional (a topic discussed further below), this statement is grounded in law inasmuch as this court is constitutionally tasked with guarding against judicial misconduct. See La. Const, art. V, § 25(C).
I must emphasize that the relevant inquiry regarding the respondent’s conduct does not require me, or any judge applying it, to accept the respondent’s accusations as true. Indeed, the standard does not even require me to question my assumption that all judiciary members involved are honest, eminently competent, and motivated by the noblest intentions, an assumption applicable to each of the judges in this matter. The standard the majority describes is focused entirely on the respondent’s statements and whether there is objective support for those statements. *672 For those statements, the record amply provides unrefuted, objective support.
In addition to the anomalies with the court’s recordings, Judge Keaty further heaped doubt onto this situation by testifying there had been some redaction of the | ^recordings to remove material from other hearings held the same day as that in question. ..Judge Keaty recanted this testimony when confronted with the court’s minutes. Ultimately, Judge Keaty admitted that there were no other hearings held the day in question. Therefore, objectively, there should have been nothing to redact from the recordings.
Viewing- the entirety of these circumstances, there was ample evidence for a reasonable attorney to question the recusal motion in the Hunter case. Indeed, recapping and viewing the totality of the following uncontested points reveals a broad, objective basis for respondent’s criticisms:
• Respondent represented Mr. Hunter in a family law matter. A transcript indicated that Judge Keaty disclosed that the sister of Mr. Hunter’s ex-wife (the opposing party), was employed by Judge Keaty’s' son. Neither respondent nor Mr. Hunter recalled Judge Keaty previously disclosing those facts on the record.
• Respondent did not make any allegations at the time, but instead simply sought the audio recordings of the hearing during which Judge Keaty claimed to have disclosed that her son employed the,opposing party’s sister.
• The court reporter was initially very defensive' about turning over the audio recording.
• Later, the court reporter went on the offensive and filed suit to enjoin the respondent from obtaining the tapes.
• Respondent was able to prove that the recordings had been altered.
• Judge Keaty testified that there had been some redaction of the recordings to remove material from other hearings held the same day as that in question.
la* Judge Keaty ultimately recanted her testimony when confronted with court minutes. Judge Keaty admitted that there were no other hearings held the day in question.
• Although Judge Keaty denied her Personal Financial Disclosure Form was inaccurate, she later filed an amended form. ,
• Judge Keaty was ordered recused from the Hunter case “due to a ‘community interest.’ ”
Although a broad basis for criticism existed, that is not to say that as an officer of the court, respondent should have made the remarks in her writ application filed in this court. Because respondent satisfied the standard the majority imposes (ie., respondent provided “objective supporting evidence” (In re: Mire, slip op’n at , 671) to rationalize her remarks), I find that respondent’s remarks were unprofessional but do not rise to the level requiring disciplinary sanctions.
Similarly, the respondent’s remarks related to the appellate court judges was ill-conceived, but not unfounded by “any objective supporting evidence.” During oral argument, the appellate court focused on whether Judge Keaty’s recusal required de novo review of her earlier rulings on the merits, as respondent argued. One member of the appellate panel even signed an order directing'the district court to send, as a proffer, the motion to recuse and Judge Keaty’s order of recusal. However, in later denying relief to respondent’s client, the same member of the panel indicated in a written concurrence that Judge Keaty’s recusal was cause for “concern[ ],” but that contents of the motion and order to recuse were unknown.- Testimony in *673 respondent’s disciplinary case ultimately confirmed that the appellate panel was,- in fact, aware of the contents of those documents. The panel decided not to consider the proffer of the motion and order to recuse when ruling on the merits of the case before |7it. Perhaps the concurrence could have been better worded to distinguish what, the panel actually knew from what it found it could permissibly consider, but as worded, respondent had “objective supporting evidence” to question that the appeal had been addressed appropriately.
Unlike the criticisms of Judge Keaty, which as noted above amounted to unprofessional remarks by respondent, the respondent’s actions could more aptly be described as questioning. Respondent actually urged this court to question what transpired from this objective .view: “This Honorable Court should consider this case from the vantage point of a litigant or outside third party.”
The “objective supporting evidence” the respondent marshalled in defense of the charges against her distinguishes this case from the recent decision in In re McCool, 15-0284 (La.6/30/15), 172 So.3d 1058. In contrast to the instant case, discipline was warranted in In re McCool because the “respondent [could] not even lay claim to holding a reasonable belief in the veracity of some of her most significant criticisms” of two judges. Id., 15-0284 at 4,172 So.3d at 1086 (Weimer, J., concurring' in part, dissenting in part).
Another important and related point overlooked by the majority, just as much as the objective evidence in this case, is the legal principle that' speech supported by objective evidence is constitutionally protected. Recalling that Louisiana’s Rule 8.2(a) tracks ABA Model Rule 8.2(a) verbatim (see n. 2, supra), the following is a statement of black-letter law, indicating that Rule 8.2(a) is to be applied within constitutional limits, as follows:
Because judges and public law officers are public officials, false statements about them cannot be prohibited or punished unless the speaker, knows them to be false or makes them with “reckless disregard” for the truth. See New York Times v. Sullivan, 176[376] U.S. 254 [84 act 710, 11 L.Ed.2d 686] (1964). Accordingly, Model Rule 8.2(a) reduces the restrictions on a lawyer’s |sspeech: to their appropriate constitutional limits, effectively incorporating the New York Times standard into Rule 8.2(a).
2 Geoffrey C. Hazard, Jr., W. William Hodes, & Peter R. Jarvis, The Law of Lawyering § 67.2 (4th ed.2015) (footnote omitted).
Notwithstanding these constitutional limits, the Office of Disciplinary Counsel has taken the position that, as the members of the legal profession, “we can never. allow ourselves to tarnish the image of our profession by accepting the use of language like that employed by the Respondent.” (Initial brief of Disciplinary .Counsel, p. 11.) This position is both constitutionally untenable and unwise. As the Supreme Court has observed, judicial efforts to squelch criticisms of the judiciary, can result in worse outcomes than any criticism itself could:
The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one’s mind, although not always with perfect good taste, on all' public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.
*674 Bridges v. State of California, 314 U.S. 252, 270-71, 62 S.Ct. 190, 86 L.Ed. 192 (1941) (footnote ommitted).
Building on Justice Black’s’observation in Bridges, I add that failing to observe constitutional limitations on Rule 8.2(a) can only have a chilling effect on the duty of lawyers to report judicial misconduct pursuant to Rule 8.3(b).[5] That is, even though lawyers are protected against retaliation for reporting judicial misconduct in | flgood faith,[6] lawyers are likely to question the efficacy of that protection if the judiciary accords lawyers’ constitutional right to free speech no protection.
In a similar vein, as I have recently noted, “because of the adversarial nature of our system of justice, criticism of judges is an expected part of the judicial system. ... The appeals process actually requires parties-and the lawyers who represent them-to identify and criticize the aspects of judicial decisions with which they disagree.” In re McCool, 15-0284 at 1, 172 So.3d at 1085 (Weimer, J. concurring in part, dissenting in part). Furthermore, because respondent is charged with misconduct for her questioning and criticizing the judiciary in a writ application filed in this court, it is worth recalling that one of this court’s considerations for granting’ a writ is the occurrence of a “Gross Departure From Proper Judicial Proceedings.” La. Sup.Ct. Rule X, § 1(a)(5). Questioning and/or criticizing judges is inherently expected as part of this court’s writ consideration.process.
A lawyer who knows that a judge has committed a violation of the applicable rules of judicial conduct that raises a question as to the judge’s honesty, trustworthiness or fitness for office shall inform the Judiciary Commission. Complaints concerning the conduct of federal judges shall be filed with the appropriate federal authorities in accordance with federal laws and rules governing federal judicial conduct and disability.
However, this court and the judiciary at large, has a justifiable expectation that a lawyer’s questioning and criticism will be respectful. Here, respondent did not always conform to that expectation. Had respondent stuck to the facts and avoided the inference through the questions she posed that inappropriate motives lay behind the judges’ handling of her client’s case, I dare say no one could accuse her of acting unprofessionally (let alone accuse her of transgressing any- sanctionable rule of professional conduct).
As to sanction, as earlier noted, I find respondent acted ■ in an unprofessional manner in the Keaty matter, but did not transgress the sanctionable provisions of the |inRules of Professional Conduct. Regarding the bankruptcy case (i.e., the Weinstein matter), the majority fails to give sufficient weight to the mitigating factors it has found, while disregarding the role of the hearing committee which, unlike this court’s majority, did not find the aggravating factor of refusal to acknowledge the wrongful nature of respondent’s conduct. See In re Pryor, 15-0243, p. 8 (La.9/1/15), 179 So.3d 566, 570 (“Unlike the disciplinary board and this court, the hearing committee was not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a rec *675 ord.”) (Quoting In re Bolton, 02-0257, p. 7 (La.6/21/02), 820 So.2d 548, 553.).
The hearing committee found, as a mitigating factor, that respondent was inexperienced in the practice of law when she failed to obtain the approval of a bankruptcy court to charge a fee in a divorce proceeding while her client was in bankruptcy. This occurred less than four years after respondent was admitted to practice. Her lack of prior discipline was also found to be a mitigating factor. The record is indeed devoid of other disciplinary matters from the time of respondent’s admission to practice in 2004. The hearing committee further found, as a mitigating factor, that the bankruptcy court sanctioned respondent, noting that the bankruptcy court’s sanctions resulted in respondent personally paying “approximately $28,000 in contempt penalties in addition to disgorgement of the approximately $7,000 fee.”
Not only is the bankruptcy court’s sanction weighty in its own right, but it is important to note that respondent is not charged with failing to return an unearned fee. Therefore, it is reasonable to infer that respondent earned her $7,000 fee, which she ultimately had to refund, in addition to $28,000 in sanctions. For a lawyer such as respondent, who was inexperienced in the practice of law when she failed to obtain the approval of a bankruptcy court to charge the fee in a divorce proceeding, it is also | nreasonable to infer that respondent has learned a costly lesson. The importance of seeking bankruptcy court approval when a client is in bankruptcy and the need for promptly complying with bankruptcy court orders have no doubt made an indelible impression on the respondent’s personal finances, and are, therefore, likely to have made a similar impression on how respondent views her professional duties. Also, one district court judge testified favorably to respondent’s truthfulness. The judge explained that he never experienced any instance of respondent being dishonest and was dismissive of statements suggesting respondent should be regarded as dishonest because those statements did not comport with the judge’s actual experience with the respondent.
As a final factor bearing on the appropriate sanction, although the hearing committee did not specifically address the respondent’s character and reputation, I am persuaded by testimony of witnesses-as well as by the stipulated testimony of an attorney, who is a state senator and a former United States Attomey-that respondent is honest and trustworthy. In fact, respondent was fully vetted and was offered a position as an Assistant United States Attorney, although respondent was unable to accept the position. Thus, there is evidence of respondent having a favorable reputation.
To recap, in the Keaty matter, I find that respondent was at times unprofessional, by acting contrary to what lawyers should and should not do, but respondent did not transgress a sanctionable Rule of Professional Conduct. Finding the bankruptcy court’s sanction adequately serves the goals of the lawyer disciplinary system in making the client whole again and deterring future misconduct, and considering the other mitigating factors, I would sanction respondent no further. See Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173, 1177-78 (La.1987) (noting that | ^disciplinary proceedings are not primarily to punish the lawyer, but are designed to maintain high standards of conduct, protect the public, and deter future misconduct). Thus, I respectfully dissent.
WEIMER, J., dissents and assigns reasons.
*676 GUIDRY, J., concurs in part, dissents in part, and assigns reasons.
HUGHES, J., dissents and assigns reasons.

. "Congress shall make no law ... abridging the freedom of speech, or of the press....” U.S, Const, amend. I.

. "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments *670 on any subject, but is responsible for abuse of that freedom.” La. Const, art. I, § 7.

. See In re: Mire, 15-1453, slip op’n at 669, for the majority’s discussion of the bankruptcy case, which it refers to as "the Weinstein matter.”

. The applicable rule in Louisiana is Rule 8.2 of Louisiana’s Rules of Professional Conduct, which tracks Model Rule of Professional Conduct 8.2. Model Rule 8.2 was promulgated by the American Bar Association (ABA), after the Supreme Court, in Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), held that statements critical of judges made by a district attorney could only be "the subject of either civil or criminal sanctions” if the statements were "false” and "made with the high degree of awareness of their probable falsity demanded by New York Times [v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)].” See Margarett Tarkington, Comment, The Truth Be Damned: The First Amendment, Attorney Speech, and Judicial Reputation, Geo. L.J., 97, 1567, 1568-69 nn. 1-5 and accompanying text (2009) (which contains the history of Model Rule 8.2). The commentator further notes there is a significant disconnect between the ABA’s originally intended standard and the application of Model Rule 8.2 by courts across the country. See Id., 1569 nn. 5-6 and accompanying text.

. Rule 8.3(b) of the Rules of Professional Conduct provides:

. A lawyer’s protection from retaliation for bringing a complaint of judicial misconduct stems from a judge's duty to “comply with the law and ... act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” La.Code of Judicial Conduct, Canon 2(A). "As. used in this Code, ‘impartiality’ or ‘impartial’ denotes absence of bias or prejudice in favor of, or against, particular parties-"Id.